## FRANK CALDWELL v. STATE OF NEBRASKA.

### FILED FEBRUARY 15, 1923.  No. 23117.

1. Evidence examined, and *held* sufficient to sustain the verdict and judgment.

2. Criminal Law: NEW TRIAL. Showing made by plaintiff in error in support of a motion for a new trial on the ground of newly discovered evidence, *held* insufficient.

ERROR to the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Mason Wheeler,* contra.

Heard before MORRISSEY, C.J., ROSE and DAY, JJ., RAPER, District Judge.

DAY, J.

Frank Caldwell, hereinafter designated defendant, was convicted of an assault with an intent to inflict great bodily injury, and sentenced to serve a term in the penitentiary of from one to five years. He has brought the record of his conviction to this court for review.

It is first urged by the defendant that the evidence is not sufficient to sustain the verdict. This would be true if the jury were limited in their considerations to the evidence produced on behalf of the defendant, but considering the entire evidence, as it was their duty to do, we are of the opinion that the evidence amply sustains the verdict. While there is a direct conflict in the evidence upon almost every material issue, the jury had the right, if they saw fit to do so, to adopt the evidence as given by the state's witnesses as being the true version of the affray.

Without attempting a full analysis of the testimony, the evidence on behalf of the state tended to prove the following state of facts: On January 10, 1922, the defendant went to the home of Albert Spitler for the purpose of getting a wagon belonging to the defendant's brother, George. As defendant was about to drive away with the wagon, Spitler requested him to take the sideboards off, as they belonged to him. Defendant refused to do this and hurriedly drove off, followed by Spitler, the latter attempting to get in the wagon. Defendant struck at Spitler a number of times with a pitchfork handle, and prevented him from getting in the wagon. Spitler says at this time defendant did not hit him, but merely struck at him. Defendant's version of this part of the controversy is that he hit Spitler several times with the pitchfork handle. The defendant took the wagon to the home of his brother, George, some 20 rods distant from the house in which Spitler lived. Spitler followed the defendant to the house of George Caldwell, both arriving there about the same time. As Spitler approached the house, defendant seized a baseball bat and went toward Spitler, warning him to keep off the place. As defendant approached Spitler, the latter picked up a 2 by 4 of convenient length, and the two men engaged in a fencing match, which, according to the testimony of the witnesses, would have done credit to the knights of olden times. Neither party succeeded in striking the

other, or, if they did, no particular injury was inflicted. Outside parties interfered and the fight calmed down. Spitler threw his 2 by 4 down, and defendant laid his baseball bat aside. Spilter started to return home, when he was called to by George Caldwell, and he returned to the place where a number of men were standing near the garage. George Caldwell then called Spitler's attention to the fact that the latter had taken the former's pole strap, and that he had charged him $3 for it. Spitler in turn claimed it had been taken by Russell, who was present. In the argument that ensued heated words were used, and some one present charged Spitler with stealing gasoline. In the controversy between Spitler and Russell a few blows were struck, but no one was hurt. This fight cooled down, and apparently all of the belligerents were ready for peace. At this juncture a man by the name of Hoppe appeared for the first time, coming out of the garage. Defendant's witnesses say that Spitler announced that he could whip all of them, and asked Hoppe whether he wanted some of it. Hoppe struck Spitler on the side of his face with his fist, knocking him down and out. As Spitler lay upon the ground, the testimony of the state's witnesses shows that defendant struck him on the top of the head with the baseball bat, which rendered him unconscious. He was carried into the garage, and soon thereafter neighbors, assisted by George Caldwell, removed him to his home. From these injuries, according to the testimony of his family, Spitler lay in an unconscious state for almost three weeks, and was not able to be about for a number of weeks thereafter. The doctor attending him testified that he was in a semicomatose state for ten days. An X-ray was afterwards taken which disclosed a fracture of the skull. Spitler's hired man, who was present, as well as his daughter, both testify positively as to the striking of Spitler with the ball bat by the defendant. The defendant denies the use of the ball bat at that time, but admits that he was about

tc kick him as he lay upon the ground, but was deterred by some one crying out, "Don't kick him when he's down." One of defendant's witnesses testified that the ball bat was not used at this time, but that defendant kicked at Spitler as he lay on the ground, and just grazed his face as his foot was coming back. Other witnesses say they did not see the ball bat used. Under this state of facts, we think it was clearly the province of the jury to determine whether defendant was guilty of an assault with intent to inflict great bodily injury.

The defendant also urged that the county attorney and his assistant should not have been permitted to prosecute the case because they were attorneys for Spitler in a civil action for damages growing out of the same state of facts. We cannot pass upon the merits of the point thus sought to be raised, because there is no proper showing in the record to support the contention. There was a motion for a new trial filed some six months after the verdict and judgment, supported by a showing of newly discovered evidence, in which a pleading is also filed in regard to the civil case; but this showing comes entirely too late to affect the ruling of the trial court upon the objection to the attorneys for the state trying the case.

It is also urged that the court erred in overruling the motion for a new trial based upon the ground of newly discovered evidence. As to this objection, it is enough to say that the showing was not sufficient. The affidavit in support of the motion simply states that a brother of Spitler had stated that Spitler had been kicked by a horse at one time, and that he frequently had a bleeding of the ear from that injury. It is plain that the party to whom the brother is supposed to have made the statement could not testify to that fact, because it would be hearsay testimony. No claim is made that the brother would testify to these facts if a new trial were granted. Besides this, the defendant has not sought to raise the question by petition, as contemplated by

.section 8828, Comp. St. 1922, and, in addition, the provisions of the statute have no application to criminal actions. *Evers v. State*, 87 Neb. 721.

Complaint is also made of the instructions of the court. The instructions as a whole clearly state the law applicable to the record.

While. the testimony tends to show that Spitler was manifesting a rather belligerent attitude, still the assault made upon him by the defendant was without justification or excuse.

Under the record  the jury were justified in finding that the assault was made with intent to inflict great bodily injury.

No prejudicial error appearing in the record, the judgment is

AFFIRMED.